CHARLES P. STETSON and another *vs.* CHARLES C. EVERETT and others, executors.

<em>Mortgage—foreclosure of—what will open.</em>

Where a mortgage of real estate has been lawfully foreclosed by the mortagee, and the most that can be alleged as the result of his acts and agreements in relation thereto is, that he was willing and had agreed to sell his foreclosure title on receipt, within a specified time, of a sum equal to the amount of the notes secured by the mortgage, the foreclosure cannot be considered as thereby opened.

Thus, a written agreement by the mortagee, with the assignee of the mortgager, after foreclosure, that upon the receipt, within a specified time, of a fixed sum equal to the amount secured by the mortgage, he will release his title acquired " by virtue of the foreclosure of my mortgage," adding, " it is the foreclosure title only, which I hereby agree to convey;" or, a bond, given by the mortagee to the assignee of the mortgager, conditioned to release all the obligor's title " being only a foreclosure or mortgage title, on payment of the balance due on the mortgage notes, the balance being " a specified sum, with a further proviso that the obligee shall pay the obligor all the sums of money which the obligee owes him,—is not sufficient evidence of an intention on the part of the obligor to keep open the foreclosure.

Stetson *v.* Everett.

The mortgager of timber land, having reserved in his mortgage, the right to cut and carry off timber from the mortgaged premises, the mortgagee, retaining title thereto, to secure the stumpage on the notes secured, conveyed his interest in different proportions to various persons, to one of whom the morgagee, after foreclosure was perfected, gave a bond to release to the obligee the mortgagee's foreclosure title upon the receipt, within a specified time, of a sum equal to the amount due on the mortgage, with interest annually. The interest was paid annually from the stumpage and indorsed upon the mortgage notes, and the whole sum was paid within the time specified. *Held*, that the payment and indorsements of the interest did not open the foreclosure; and that the assignee of the mortgager, in obtaining the mortgagee's title, did not act as the trustee of the other assignees of the mortager.

On Report.

Assumpsit on a written agreement on the part of the defendants as executors of the last will and testament of Rufus Dwinel, late deceased. The said executors, being desirous of selling a tract of land called Gordon Brook, of which the plaintiffs claimed to own one-eighth, the defendants took the plaintiffs' quitclaim deed and entered into a written agreement with the plaintiffs to sell the land, and account to them for so much of the proceeds as they proved themselves entitled to. The tract contained sixty-six hundred acres, and was sold at three dollars and sixty cents per acre.

It appears that on Sept. 20, 1854, S. H. Blake conveyed the premises to G. M. Weston, subject to a mortgage from one Swett, to one Warren, taking back a mortgage of the same premises to secure the mortgager's two notes of $2,211 each, payable in one and two years. This latter mortgage reserved the right to cut and carry off the lumber from the tract, the mortgagee retaining title to secure the stumpage on the notes.

On the same day, G. M. Weston quitclaimed one-half of the premises to Pearson & Trickey; one-eighth to Brastow; three-eighths to N. Weston,—all subject to the same respective proportions of the G. M. Weston and the Swett mortgages.

On July 10, 1857, Blake foreclosed the Weston mortgage by publication.

In the winter of 1859–'60, Weston, Pearson, and Trickey, lumbered off of the premises, and the stumpage was received by

Blake and indorsed on the Weston notes, July 17, 1860. The same was done in winter of 1860–61, and indorsed July 17, 1861. The indorsements on the note, payable in two years, were as follows:

" July 17, 1860. Received interest to date by stumpage." " July 17, 1861. Received one year's interest in stumpage."

On the note payable in one year as follows:

" July 17, 1860. Received interest to date by way of stumpage." " July 17, 1860. Received balance of stumpage on account, $144.05." " July 17, 1861. Received one year's interest in stumpage." " Nov. 26, 1861. Received $1,579.63 in stumpage."

On Feb. 16, 1860, Pearson conveyed his interest to Trickey, who on July 17, 1860, conveyed the premises conveyed to himself and Trickey, to Rufus Dwinel.

On March 19, 1860, Brastow conveyed his interest (one-eighth) to Gilman Cram, who on June 14, 1864, released the same to F. A. Wilson (one of the plaintiffs), who on the same day released one-half of the one-eighth to C. P. Stetson (the other plaintiff), both of whom released to the defendants for the purpose before mentioned.

On July 16, 1860, Blake gave a written obligation to N. Weston to convey to him or his assigns " the title acquired by me by the foreclosure of my said mortgage to one-half of the Gordon Brook tract, on payment of one-half of $4,277.95, being the amount of the mortgage on the Gordon Brook tract, and interest annually, within three years, adding—" it is the foreclosure title only, which I hereby agree to convey." " Payment to be made out of stumpage, but to be completed at any rate, within three years."

On July 17, 1860, Blake gave a similar obligation to Trickey to convey the other half.

On Oct. 1, 1860, N. Weston, in consideration of $1,367 assigned Blake's obligation to Calvin Dwinel, who assigned the same to Rufus Dwinel.

On Feb. 20, 1864, Blake gave a bond to Rufus Dwinel to release " all my right, title, and interest in and to an undivided half

of the Gordon Brook tract, same I gave obligation for to N. Weston July 16, 1860, and by him assigned to C. Dwinel, and by him to Rufus Dwinel;

" Provided, said Dwinel shall pay me the balance due on G. M. Weston's notes secured on said tract on or before the 20th May, 1864,—said balance is $2,698.32.

" And provided further, that said Dwinel shall pay all sums of money which he may have hired of me or of the Merchants bank, Bangor, or which he may hereafter hire or borrow of me or said bank, and shall pay all paper he has heretofore, or may hereafter negotiate to me or said Bank, and shall pay all taxes assessed or that may be assessed upon said parcels of land. If said indebtedness to me or bank is not so paid, I am to have privilege of selling so much of said premises at public auction, after three days' notice, as will pay such indebtedness or liability; all stamps, required for the conveyance, to be paid for by said Dwinel."

On April 19, 1864, N. Weston released three-eighths to Blake.

On June 15, 1864, Brastow, in behalf of Wilson, left with Blake $20, with a request to have it indorsed on the notes, which was declined.

The executors of Rufus Dwinel, he having died, paid Blake in accordance with the agreement, and Blake conveyed to them, as per agreement with Dwinel.

Upon the back of the notes are indorsements of interest to date as often as semi-annually, from December, 1862, to July, 1869, all paid by Rufus Dwinel by way of stumpage.

If the action is not maintainable, a non-suit to be entered.

*C. P. Stetson*, for the plaintiffs, cited, upon the point of opening the foreclosure, *Denning* v. *Comings*, 11 N. H. 474; *Batchelder* v. *Robinson*, 6 N. H. 12; *McNeil* v. *Call*, 19 N. H. 403; *Moore* v. *Besom*, 44 N. H. 219; *Fisher* v. *Shaw*, 42 Maine, 39; *Winchester* v. *Ball*, 54 Maine, 560; *Lawrence* v. *Fletcher*, 8 Met. 153; *Dexter* v. *Arnold*, 1 Sumner, 119.

That Rufus Dwinel acted as trustee. 1 Washb. on Real Est., 430; 4 Kent's Com. 391; *Administrators of Downer* v. *Smith*, 38 Vt. 464;

*Thornton* v. *York Bank*, 45 Maine, 158; *Dyer* v. *Wilbur*, 48 Maine, 287.

*J. A. Peters*, for the defendants.

Blake had an indefeasible title by foreclosure, July 9, 1860.

Receiving stumpage in 1860 was no waiver, being Blake's own property received from the land. Same with the stumpage of 1860, 1861. Blake's agreement gave three years to pay (out of the stumpages) for the foreclosed title.

There was in Blake's agreement no extension of his mortgage, only an agreement to sell, and to allow cuttings and stumpages. Dwinel bought a new title.

The payment to Blake of $20 was a " dead duck," Blake having declined to appropriate it.

KENT, J. The mortgage was foreclosed by publication, unless it has been prevented, and the right of redemption kept open by acts or admissions of the parties interested. It may be admitted that a mortgage, in such a case, may be kept open by the express agreement of the parties, or by facts and circumstances, clearly proved, from which an agreement to that effect may be satisfactorily inferred. *Fisher* v. *Shaw*, 42 Maine, 39; *Winchester* v. *Ball*, 54 Maine, 560; *Lawrence* v. *Fletcher*, 8 Met. 153.

But the *prima facie* conclusion, when a legal foreclosure is shown, is that it was so intended, and that it must so operate, until proof is adduced which overcomes this presumption. It must be shown that the holder of the mortgage has either expressly agreed to waive, for a time or indefinitely, the attempted foreclosure, or has so conducted in reference to it, with other parties interested, that the law will infer such agreement, or hold him to have abandoned his attempt.

We cannot find, in the evidence reported, sufficient proof of an intention on the part of Mr. Blake to yield his title by foreclosure; or to keep open the mortgage as a mortgage, unforeclosed. He, it is true, gave to Trickey after foreclosure an obligation that upon pay-

ment of one-half of $4,277.95 (a fixed sum), being amount of the mortgage upon this whole tract, and interest annually within three years, he would release such title as he had to one-half of the tract, "by virtue of the foreclosure of my mortgage." He gave a like agreement to Nathan Weston for the other half, in which he agrees to convey to him "the title acquired by me by the foreclosure of my said mortgage." And to make it more explicit, he adds: "it is the foreclosure title only which I hereby agree to convey."

Subsequently Mr. Blake, having obtained a release from Nathan Weston, gave a bond to Rufus Dwinel, whose estate is here represented by his executors, conditioned to release to him all his title to one-half of the tract, "my title being only a foreclosure or mortgage title, on payment of balance due on the mortgage notes, said balance being $2,698.32," with a further proviso, that Dwinel shall also pay all sums of money, that he may be owing to said Blake or to the Merchants bank.

In all these agreements in writing, Mr. Blake refers to his title as one acquired by the foreclosure. He does not allude to the mortgage as still open for redemption, but sedulously guards against any such inference from his acts. The most that can be alleged as the result of his acts and agreements is, that he was willing to sell his foreclosed title, for a sum equal to the amount of the notes which he held, which were secured by the mortgage. It seems to us that a man may do that, without thereby relinquishing his title by foreclosure. He may be willing to sell this title to the mortgager, for a less sum than he would to others, from motives of friendship or from some parol understanding, honorary in its character, provided the payments be promptly made at the day fixed, and yet not be willing to keep the legal right of redemption open indefinitely on the mortgage. *Holmes* v. *Gerry*, 55 Maine, 355.

It is true that Mr. Blake, in his statement (made evidence in the case) says he felt sure of his pay, and that "he never intended as against Trickey, Weston, or Dwinel, or any other party interested in the right of redemption, to take advantage of the foreclosure to claim a forfeiture of the land to me. I only intended

to claim the amount due me on the mortgage and agreed interest, and this was the amount paid to me by the executors of Dwinel, and I released to them as I had agreed with Dwinel."

But he adds, " Nor have I ever intended to impair the force of my obligation to Dwinel to release the foreclosure title, by any act in which he was not a party, or the expression of any intention of which he was not cognizant; I only state what I did and what I should not have done, upon the happening of an imaginary contingency."

Taken together these statements seem to leave the matter as it stands in the written agreements, and to amount simply to a restatement of the fact that he was willing to release his title by foreclosure for the sum named, to those interested in the mortgage. This right he finally gave to Mr. Dwinel alone. This view is confirmed by the refusal of Mr. Blake to accept the $20 left with him by Brastow, to go toward one-eighth of Gordon Brook tract. Mr. Blake says : " I told Brastow I should not indorse it on notes, or otherwise appropriate it. I told him I could not indorse anything he paid me on the mortgage notes, as I had given Mr. Dwinel an obligation to release my foreclosure title, better or worse, to him, upon payment of the notes by him. I could not therefore indorse it without Dwinel's consent." The payments of interest indorsed on the notes appear to have been made by Dwinel alone, and are simply a mode for easily determining the amount due under the bond, whenever Dwinel was ready to pay the sum named.

Dwinel had a bond for a conveyance of this foreclosed title, not a right to redeem the mortgage. In the transaction he was acting for himself, and not as trustee or agent of others, who had been interested in the mortgage, before foreclosure.

It is not the case of the redemption of a mortgage by one co-tenant, or one of several joint mortgagers. It is simply the case of one of several distinct parties, who had been interested as mortgagers, under different interests, obtaining for himself a new and independent title to the premises, which had become vested in the mortgagee by foreclosure. This he might lawfully do, without

becoming the trustee of the other parties, or being in any way accountable to them.

We do not see how, upon the case presented, the plaintiffs can maintain this action. According to the agreement of the parties, therefore, the entry must be                    *Plaintiffs nonsuit.*

